**John J. TIGUE, Jr., Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., Plaintiffs–Appellants,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Internal Revenue Service, Defendants–Appellees.**

**Docket No. 01–6243.**

United States Court of Appeals, Second Circuit.

Argued: July 15, 2002.

Decided: Nov. 15, 2002.

---

John J. Tigue, Jr., Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, NY (Daniel B. Kosove, on the brief) for Plaintiffs–Appellants.

Daniel S. Alter, Assistant United States Attorney, (James Comey, United States Attorney for the Southern District of New York, Gideon A. Schor, Assistant United States Attorney, on the brief) for Defendants–Appellees.

Before: CABRANES, SOTOMAYOR, Circuit Judges, and GLEESON*, District Judge.

SOTOMAYOR, Circuit Judge.

This appeal was brought by a lawyer and his law firm seeking access under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b), to a memorandum ("the Neiman Memorandum" or "Memorandum") prepared by an assistant United States Attorney in the Southern District of New York ("Southern District") and sent to a public commission. The Neiman Memorandum outlines the Southern District's opinions and recommendations as to how the Internal Revenue Service ("IRS") should conduct criminal tax investigations. The Memorandum was written for, and forwarded to, the Criminal Investigation Division Review Task Force headed by Judge William Webster ("the Webster Commission"), which was established by the IRS to gather information and make suggestions on how to reform its Criminal Investigations Department ("CID"). The district court held that the government did not have to produce the Neiman Memorandum because it was shielded by the FOIA's exemption for documents reflecting an agency's deliberative processes, relying on 5 U.S.C. § 552(b)(5).

On appeal, plaintiffs claim that the Neiman Memorandum was not an intra- or inter-agency document as required for exemption under § 552(b)(5) because it was provided to the Webster Commission, an independent task force that intended to issue a public report of its findings, and that it is not privileged as material of an agency consultant. Plaintiffs also contend that the Neiman Memorandum is not "predecisional" because it was prepared to assist the Webster Commission rather than the IRS and does not relate to a sufficiently specific agency decision. They further argue that even if the deliberative process exemption applies, the government waived that protection by reproducing a quotation from the memorandum in the report published by the Webster Commission ("Webster Report" or "Report"). Finally, they argue that if the document is protected, any purely factual sections should be made

* The Honorable John Glesson, United States District Judge for the Eastern District of New York, sitting by designation.

available. We disagree. We hold that (1) the Webster Commission was a consultant to the IRS that was charged with assisting the agency in developing its policy, rendering a memorandum sent from the Southern District to the Webster Commission an inter-agency document; (2) because the IRS created the Webster Commission in order to help it decide whether and how to reform the CID, the document is predecisional; (3) because the Webster Commission's Report was not a final decision, the government did not waive executive privilege; and (4) after *in camera* review, the district court properly found that there were no reasonably segregable parts of the Neiman Memorandum subject to disclosure.

## BACKGROUND

During his confirmation hearings before the Senate in the fall of 1997, IRS Commissioner Charles Rossotti made a commitment to improving the quality of service provided by each of the major components of the agency. To that end, in July 1998, Rossotti asked Judge William Webster, former director of both the FBI and the CIA, to establish a task force to conduct an "independent review" of the IRS's CID to "determine [CID's] effectiveness in accomplishing its mission, and make recommendations for improvement." Judge Webster recruited a number of experts with extensive experience in criminal investigations, law enforcement and federal prosecution to serve on the Webster Commission.

The Webster Commission spent nine months reviewing "countless" documents and interviewing over 600 people, including a number of law enforcement officials. The Webster Commission specifically requested the opinions of the Southern District because it handled more tax investigations than any other district. Then–

Deputy U.S. Attorney Shirah Neiman wrote a sixteen-page memorandum expressing the views of the Southern District on "the various agency components involved in criminal tax enforcement; ... the then existing focus of tax investigations and prosecutions and the deployment of IRS resources; ... the difference[s] between [the Southern District's] position on various issues and that of other agency components; ... and [the Southern District's] recommendations to ensure the continuation of vigorous criminal tax enforcement." According to Neiman, the Neiman Memorandum expressed the views of the Southern District and not those of the Department of Justice as a whole or Neiman as an individual, and her expectation that the memorandum would remain confidential contributed to her willingness to express the Southern District's opinions and policies about tax investigations.

The Webster Commission released its Report on April 9, 1999 to significant media attention. The 113–page Report includes both a factual inquiry into the practices of the CID and a set of recommendations about how the CID should be improved. Included in the Report is a letter from Commissioner Rossotti stating that the Report "will guide us to improve the work of this critically important component of tax administration for many years to come" and that the IRS concurred with the specific recommendations in the Report, although noting that "some of the recommendations, particularly those concerning organization structure, need further analysis and design work in coordination with our other organizational changes."

The Neiman Memorandum is mentioned twice in the Report. First, the Neiman Memorandum is referenced in a footnote as representing an opposing view to the position held by the leadership of the De-

partment of Justice Criminal Division, most United States Attorneys, and other important figures in criminal enforcement, all of whom apparently believe that the CID should continue to investigate money laundering and narcotics cases. Later in the Report, it is quoted as criticizing the use of administrative investigations and IRS summons because they are slower than grand jury subpoenas: "[s]ervice of an administrative summons simply does not convey the urgency of a grand jury subpoena, and is not as readily enforceable as a subpoena, and represented subjects of administrative investigations often succeed in dragging out these investigations for unimaginably long periods."

Plaintiff John Tigue, an attorney whose law firm, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., often represents individuals in connection with federal grand jury tax investigations and IRS administrative investigations, enforcement actions, and prosecutions, obtained a copy of the Report and noticed the references to the Neiman Memorandum. Believing that review of the Neiman Memorandum would improve his understanding of Southern District policy and thus allow him to represent his clients better, Tigue and his law firm ("plaintiffs") submitted a FOIA request for the Neiman Memorandum on August 18, 1999. Following a period of delay in which the Department of Justice ("DOJ") and the IRS attempted to discern which agency should respond to the FOIA request, the DOJ denied the application on April 28, 2000, and, on September 28, 2000, denied the appeal, citing 5 U.S.C. § 552(b)(5), which protects the so-called "deliberative process privilege."

On February 14, 2001, plaintiffs filed suit against the IRS and the DOJ in the United States District Court for the Southern District of New York. The parties cross-moved for summary judgment. Fol-lowing oral argument on October 23, 2001, Judge Hellerstein ruled that the Neiman Memorandum met the requirements of § 552(b)(5) and was therefore exempt from production under the FOIA, and that the government had not waived the privilege by citing to and quoting from the Neiman Memorandum in the published Report. At that time the court also requested that the government review the Neiman Memorandum to determine whether any sections of the document could be produced as purely factual. On October 29, 2001, after *in camera* review of a marked copy of the Neiman Memorandum, the district court issued an order finding that the Memorandum was "predominantly evaluative, evaluating both policies and procedures of the United States Attorney for the Southern District of New York in criminal investigations involving tax matters and those of the Internal Revenue Service, and recommending procedures for the Internal Revenue Service." The district court also found that "[t]here is no factual material in the report that is not inextricably intertwined with evaluations and recommendations of policy" and thus denied plaintiffs' alternative request for partial production of the Neiman Memorandum.

Plaintiffs appeal both the October 23, 2001 and October 29, 2001 rulings.

## DISCUSSION

 This Court reviews *de novo* a district court's grant of summary judgment in FOIA litigation. *Halpern v. FBI*, 181 F.3d 279, 288 (2d Cir.1999). This Court also reviews *de novo* a district court's decisions whether to require partial production of documents following *in camera* review, in keeping with the spirit and the text of the FOIA and its presumption in favor of disclosure. *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 n. 2 (2d Cir.1999).

The FOIA, 5 U.S.C. § 552, was enacted to ensure public access to information created by the government in order "to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). Thus, "[u]pon request, FOIA mandates disclosure of records held by a federal agency unless the documents fall within enumerated exemptions." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (internal citations omitted). The Supreme Court has counseled that these exceptions are to be interpreted narrowly in the face of the overriding legislative intention to make records public. *See id.* at 7–8, 121 S.Ct. 1060.

At issue here is FOIA Exemption 5, which protects from disclosure "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Stated simply, agency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (*e.g.*, attorney-client, work-product, executive privilege) are protected from disclosure under Exemption 5." [1] *Grand Cent. P'ship*, 166 F.3d at 481 (internal quotation marks and citation omitted).

Specifically, the government claims that the deliberative process privilege, a sub-species of work-product privilege that "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated,'" *Klamath*, 532 U.S. at 8, 121 S.Ct. 1060 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)), permits withholding of the Neiman Memorandum. The rationale behind this privilege is "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Id.* at 8–9, 121 S.Ct. 1060 (quoting *Sears*, 421 U.S. at 151, 95 S.Ct. 1504); *accord Coastal States*, 617 F.2d at 866 ("The [deliberative process] privilege has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.").

In order for a document to be protected by deliberative process privilege, it must be: (1) an inter-agency or intra-agency document; (2) "predecisional"; and (3) deliberative. *See Klamath*, 532 U.S. at 8, 121 S.Ct. 1060 (discussing the agency-ori-

---

**1.** "This discovery standard can only serve as a rough guide to the courts, since decisions as to discovery are usually based on a balancing of the relative need of the parties, and standards vary according to the kind of litigation involved. Furthermore, the most fundamental discovery and evidentiary principle, rele-vance to the issues being litigated, plays no part in FOIA cases." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C.Cir. 1980) (internal citations and quotation marks omitted); *accord EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

gin requirement); *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir.1988) (enumerating the predecisional and deliberative requirements); *Lead Indus. Ass'n, Inc. v. OSHA*, 610 F.2d 70, 83 (2d Cir.1979) (same). Plaintiffs concede that the Neiman Memorandum is, at least in part, deliberative, but challenge the government's right to withhold the Memorandum on the other two grounds.

## I. Intra- and inter-agency communications

■ As noted above, Exemption 5 protects only "intra-agency" or "inter-agency" communications. While "intra-agency" documents are those that remain inside a single agency, and "inter-agency" documents are those that go from one governmental agency to another, they are treated identically by courts interpreting FOIA. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 188, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975) ("Exemption 5 does not distinguish between inter-agency and intra-agency memoranda."). The question at issue regarding the intra- or inter-agency requirement is whether the document either originated from or was provided to an entity that is not a federal government agency, in which case the document is not protected by the exemption.

The Supreme Court has cautioned that the term "intra-agency" is not "just a label to be placed on any document the Government would find it valuable to keep confidential." *Klamath*, 532 U.S. at 12, 121 S.Ct. 1060. By statutory definition, " 'agency' means each authority of the Government of the United States," with certain exemptions not relevant here. 5 U.S.C. § 551(1). It is undisputed that the Webster Commission was not an "agency." *See Meyer v. Bush*, 981 F.2d 1288, 1298 (D.C.Cir.1993) (holding that a task force created by the President to study regula-

tory relief is not an "agency" under the FOIA). From this uncontested point, plaintiffs reason that Exemption 5 cannot apply. The government, in turn, contends that because the Webster Commission acted as a consultant to the IRS, an agency, in soliciting the Neiman Memorandum, and relied on the Neiman Memorandum in preparing the Webster Report for the IRS, the district court properly concluded that the Neiman Memorandum was an intra-agency communication. The government also argues that the Neiman Memorandum could be deemed an inter-agency communication because it was provided by the Southern District for use in the IRS decision-making process. For the reasons that follow, we conclude that because the Webster Commission was acting as a consultant to the IRS when it solicited the Neiman Memorandum, and the Neiman Memorandum was prepared by the Southern District, an agency, to assist the IRS with determining how best to reform the CID, the Neiman Memorandum is an inter-agency communication.

■ In considering the scope of Exemption 5, this Circuit has recognized that agencies may require assistance from outside consultants in formulating policy, and has held that "nothing turns on the point that ... reports were prepared by outside consultants ... rather than agency staff." *Lead Indus.*, 610 F.2d at 83 (citing *Soucie v. David*, 448 F.2d 1067, 1078 n. 44 (D.C.Cir.1971)); *accord Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C.Cir.1980) ("When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an 'intra-agency' memorandum for purposes of determining the applicability of Exemp-

tion 5.").[2] Instead, "[w]hether a particular document is exempt under (b)(5) depends not only on the intrinsic character of the document itself, but also on the role it played in the administrative process." *Lead Indus.*, 610 F.2d at 80.

█ Plaintiffs acknowledge that this Court has held that communications with consultants may be considered intra-agency, but argue, relying heavily on the D.C. Circuit's opinion in *Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571, 574 (D.C.Cir.1990), that because the memorandum was prepared to assist the Webster Commission with its decisionmaking and was never reviewed by any IRS decisionmaker, the consultant principle is inapposite. In *Dow Jones*, the government had argued that documents provided by the Department of Justice to Congress were protected as inter-agency documents. The D.C. Circuit rejected that position on the grounds that documents prepared to assist with Congress's deliberative process could not be entitled to Exemption 5 privilege because Congress was not an agency for FOIA purposes. *Id.* Here, in contrast, the Webster Commission was not acting on its own behalf in requesting the Neiman Memorandum from the Southern District—rather, it was acting as a consultant to the IRS, an agency, to assist that agency with developing policy recommendations regarding the CID. Plaintiffs recognize, as they must, that the privilege would have been maintained had Neiman given her memorandum directly to the IRS. *Renegotiation Bd.*, 421 U.S. at 188, 95 S.Ct. 1491 ("By including inter-agency memoranda in Exemption 5, Congress plainly intended to permit one agency possessing decisional authority to obtain written recommendations and advice from a separate agency not possessing such decisional authority without requiring that the advice be any more disclosable than similar advice received from within the agency."). The fact that Neiman transmitted it to the Webster Commission for use in the Commission's recommendations on IRS policy does not alter our view of the matter.

Plaintiffs also contend that an agency consultant's source material cannot be withheld under Exemption 5 where the author had no reasonable expectation that her material would be kept confidential. According to plaintiffs, "[w]here there is no fear of publicity, there is no basis in policy for extending Exemption 5 to consultants' work, especially where the statutory language does not provide for such a result." The issue here, however, is not whether the Webster Commission's public Report is exempt, but rather, whether the

---

**2.** In *Klamath,* the Supreme Court recently considered claims that documents submitted by various Indian tribes to the Department of the Interior expressing the tribes' positions on a water allocation project were "intra-agency" documents entitled to protection under Exemption 5. *Klamath,* 532 U.S. at 7–16, 121 S.Ct. 1060. In rejecting that argument, the Court observed that "[a]lthough neither the terms of the exemption nor the statutory definitions say anything about communications with outsiders, some Courts of Appeals have held that in some circumstances a document prepared outside the Government may nevertheless qualify as an 'intra-agency' memorandum under Exemption 5." *Id.* at 9, 121 S.Ct. 1060 (citing *Hoover v. U.S. Dep't of Interior,* 611 F.2d 1132, 1137–38 (5th Cir.1980); *Lead Indus.,* 610 F.2d at 83; *Soucie,* 448 F.2d at 1067). While the Supreme Court declined to rule on the validity of this "consultant corollary," it distinguished the tribes from consultants, noting that the latter typically "have not been communicating with the Government in their own interest or on behalf of any person or group whose interest might be affected by the Government action addressed by the consultant [and thus] may be enough like the agency's own personnel to justify calling their communications 'intra-agency.'" *Klamath,* 532 U.S. at 11, 12, 121 S.Ct. 1060. Unlike in *Klamath,* plaintiffs in this case do not argue that the Webster Commission is an interested party.

Commission may be considered a part of the IRS for purposes of determining whether the Neiman Memorandum falls within the scope of Exemption 5 as an inter-agency communication. Although the Webster Commission may have had no intention to keep private *its* findings and recommendations, this has no bearing on the Southern District's expectation that its opinions would be kept confidential by the Webster Commission and the IRS. In fact, this Court has held that editorial decisions such as determining which parts, if any, of a confidential document to include in a public record are precisely the type of internal agency decisions that Exemption 5 was designed to protect. *See Lead Indus.*, 610 F.2d at 86 ("If the segment appeared in the final version, it is already on the public record and need not be disclosed. If the segment did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so.").[3]

Just as predecisional documents prepared by the Webster Commission for the IRS would be deemed *intra*-agency communications, *see id.* at 83, otherwise privileged communications by another agency intended to assist the Commission with its ultimate responsibilities to the IRS are, for purposes of the FOIA, *inter*-agency communications with the IRS. *Cf. Dow Jones*, 917 F.2d at 575 ("Exemption 5 permits an agency to protect the confidentiality of communications from outside the agency so long as those communications are part and parcel of *the agency's* deliberative process."). The Webster Commission was acting as a consultant to the IRS when it solicited the Memorandum. It was charged with assisting the IRS with determining how best to reform the CID, and the Commission's Report proposed solutions to specific problems within the CID based on the information conveyed to the Commission by the Southern District, among its other sources.[4] To conclude that the deliberative process privilege does not apply when an outside consultant to an agency receives information from another agency effectively would condition the use of consultants on both agencies' willingness to disclose any information the consultant reviews in the process of its work and would unreasonably hamper agencies in their decision-making process.

Insofar as the communications were between the Southern District and a consultant for the IRS, the Neiman Memorandum is more properly considered an inter-agency document than an intra-agency document, in that it was prepared by one governmental agency for use by another agency.[5] The interposition of the Webster Commission between the two agencies does not alter this result. We therefore find the Neiman Memorandum eligible for protection under the first prong of Exemption 5.

---

**3.** To the extent that plaintiffs argue that the publication of the Report with a reference to the Neiman Memorandum suggests that there is no basis to protect the Memorandum as a consultant's source material, that argument is addressed in greater detail below in the discussion of waiver.

**4.** Although plaintiffs state that the Webster Commission "essentially functioned as a watchdog, providing some measure of public oversight over the IRS," they acknowledge that part of the Commission's assignment included evaluating CID policies and making recommendations for improvement.

**5.** Alternatively, as a document prepared for use by a consultant to an agency, the Neiman Memorandum perhaps could also be viewed as an intra-agency document, as the district court concluded. Because we find that the Memorandum is an inter-agency document, we do not decide that issue.

## II. Predecisional

 "A document is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his decision." *Grand Cent. P'ship*, 166 F.3d at 482 (internal quotation marks and citations omitted). Protected by this privilege are "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (internal quotation marks and citations omitted). However, "the privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." *Id.* (quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir.1994) (internal quotation marks omitted)).

Plaintiffs argue that because the Neiman Memorandum was provided to the Webster Commission, rather than to the IRS, it cannot be deemed predecisional, as it was never relied upon by any IRS decisionmaker. As source material for the Webster Report, however, the Neiman Memorandum was prepared for the Commission in order to assist the IRS in its decisionmaking regarding the future of the CID. This decisionmaking is precisely the type contemplated by *Grand Central Partnership*.

 Plaintiffs further contend, citing *Maricopa Audubon Society v. United States Forest Service*, 108 F.3d 1089, 1094 (9th Cir.1997), that the district court erred in failing to identify any specific decision connected to the Memorandum. In *Maricopa*, the government had argued that "because agencies are involved in a continual process of self-examination, [they] need not identify a specific decision in which [documents claimed to be protected under Exemption 5] will culminate in order for those materials to be 'predecisional.'" *Id.*

The Ninth Circuit disagreed, holding that while an agency need not actually demonstrate that a specific decision was made in reliance on the allegedly predecisional material, the government must show that the material was prepared to assist the agency in the formulation of some specific decision. *Id.* In other words, while the agency need not show *ex post* that a decision was made, it must be able to demonstrate that, *ex ante*, the document for which executive privilege is claimed related to a specific decision facing the agency. *See Sears*, 421 U.S. at 151 n. 18, 95 S.Ct. 1504. The Neiman Memorandum, however, meets the criteria established in *Maricopa*, as it is "not merely part of a routine and ongoing process of agency self-evaluation," *Maricopa*, 108 F.3d at 1094, but rather was specifically prepared for use by the Webster Commission in advising the IRS on its future policy with respect to the CID. As in *Maricopa*, the fact that the government does not point to a specific decision made by the IRS in reliance on the Neiman Memorandum does not alter the fact that the Memorandum was prepared to assist IRS decisionmaking on a specific issue.

We therefore conclude that the district court did not err in holding that the Neiman Memorandum falls within the Exemption 5 privilege.

## III. Waiver

 Even though protected by Exemption 5, the government nonetheless may be required to disclose the Neiman Memorandum if it waived the deliberative process privilege. Consistent with 5 U.S.C. § 552(a)(2), which requires disclosure of *final* agency decisions, the Supreme Court held in *Sears* that production of ostensibly predecisional material may be compelled where "an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previ-

ously covered by Exemption 5 in what would otherwise be a final opinion." *Sears*, 421 U.S. at 161, 95 S.Ct. 1504. In so concluding, the Supreme Court reasoned that:

> [t]he probability that an agency employee will be inhibited from freely advising a decisionmaker for fear that his advice, if adopted, will become public is slight. First, when adopted, the reasoning becomes that of the agency and becomes its responsibility to defend. Second, agency employees will generally be encouraged rather than discouraged by public knowledge that their policy suggestions have been adopted by the agency. Moreover, the public interest in knowing the reasons for a policy actually adopted by an agency supports the District Court's decision below.

*Id.*

Plaintiffs contend that the citation to and publication of an excerpt of the Neiman Memorandum in the Webster Report, which was ultimately made public, was a waiver of the privilege provided by Exemption 5. Under the circumstances here, however, the minor references to the Neiman Memorandum cannot be said to be an express adoption or incorporation. *See Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1197 (D.C.Cir.1991) (distinguishing between "reference to a report's conclusions [and] adoption of its reasoning," and noting that "it is the latter that destroys the privilege"); *Common Cause v. IRS*, 646 F.2d 656, 660 (D.C.Cir.1981) (holding that a "casual allusion in a post-decisional document to subject matter discussed in some pre-decisional, intra-agency memoranda" does not waive Exemption

5).[6] Accordingly, we conclude that the government did not waive its right to assert the deliberative process privilege as to the Neiman Memorandum.

We also reject plaintiffs' position that Neiman's knowledge that the Webster Commission would issue a published report constitutes a waiver of the deliberative process privilege. Even if Neiman could have been expected to know that a report would be published, we find no reason to doubt that she expected that her Memorandum would remain confidential. As previously noted, she prepared the Memorandum to give the Southern District's recommendations, based on its experience, to the IRS, for use in the IRS's internal evaluation through the Webster Commission. In choosing to reveal the existence of the Memorandum and to publish a very brief excerpt, the Commission exercised its discretion by revealing only information that it determined should be made public and withholding the rest. *Cf. Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 603–04 (D.C.Cir.2001) (rejecting claim that partial publication of a document waived the attorney-client privilege as to the remainder of that document). Although the fact that the agency in *Rockwell International* took additional steps to ensure confidentiality also factored into the D.C. Circuit's finding that the attorney-client privilege had not been waived in that case, we conclude that, for purposes of the deliberative process privilege, the incorporation of one sentence from the Neiman Memorandum in the published Report is not inconsistent with the IRS's or the Southern District's "desire to keep the rest secret." *Id.* at 605.

---

6. We also note that this "waiver by incorporation" doctrine applies only where the agency expressly adopts or incorporates an inter-agency memorandum *"in what otherwise would be a final opinion." Sears*, 421 U.S. at

161, 95 S.Ct. 1504 (emphasis added). Arguably, as the Webster Report was not drafted by IRS decisionmakers, and it was prepared to aid the IRS in making its decision about internal reforms, it was not a "final opinion."

82

## IV. *In camera* review

Finally, plaintiffs urge us to release any portions of the Neiman Memorandum that contain purely factual information. The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).

■ At oral argument, we requested that the government provide a redacted version of the Neiman Memorandum indicating what factual information, if any, was within the public domain. The government complied, but continued to maintain that this information should be withheld because it was intertwined with and provided insight into privileged material. After *de novo in camera* review of the original and redacted memoranda, we conclude that the district court properly found that "the document is predominantly evaluative, evaluating both policies and procedures of the United States Attorney for the Southern District of New York in criminal investigations involving tax matters and those of the Internal Revenue Service, and recommending procedures for the Internal Revenue Service." We also conclude that even the limited factual material admittedly in the public domain is too intertwined with evaluative and policy discussions to require disclosure. *See Lead Indus.*, 610 F.2d at 85.

## CONCLUSION

For the foregoing reasons, we affirm the orders of the district court granting defendants' motion for summary judgment and denying plaintiffs' cross motion for summary judgment.