AUTOMOBILE CLUB OF NEW YORK, INC., d/b/a "AAA New York," and AAA North Jersey, Inc., Plaintiffs,

v.

The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant.

No. 11 Civ. 6746 (RKE)(HBP).

United States District Court, S.D. New York.

May 8, 2013.

Kevin P. Mulry, Esq., Farrell Fritz, PC, Uniondale, NY, Michael F. Fitzgerald, Esq., Farrell Fritz, PC, New York, NY, for Plaintiffs.

Kathleen G. Miller, Esq., Arnold D. Kolikoff, Esq., Carlene V. McIntyre, Esq., David R. Kromm, Esq., The Port Authority of New York and New Jersey, Alexander H. Southwell, Esq., Nancy E. Hart, Esq., Randy M. Mastro, Esq., Gibson, Dunn & Crutcher, LLP, New York, NY, Debra Wong Yang, Esq., Gibson, Dunn & Crutcher, LLP, Los Angeles, CA, for Defendant.

*OPINION AND ORDER*

PITMAN, United States Magistrate Judge:

I. *Introduction*

Plaintiffs Automobile Club of New York, Inc., doing business as "AAA New York," and AAA North Jersey, Inc. (collectively, "AAA") claim that the privilege log submit-

ted by defendant the Port Authority of New York and New Jersey (the "Port Authority") is deficient. The Port Authority produced a privilege log that identified categories of withheld documents, rather than identifying each individual document withheld. AAA does not object to the Port Authority's use of a categorical privilege log, but instead contends that eight of the categories do not contain the substantive information required by Rule 26 of the Federal Rules of Civil Procedure. AAA seeks an order directing the Port Authority to amend its log to correct this deficiency.

For the following reasons, I conclude that the Port Authority's privilege log should be supplemented as detailed below.

## II. *Facts*

### A. *Plaintiffs' Underlying Allegations*

The facts and allegations in this case are fully set forth in the decision of the Honorable Richard J. Holwell, United States District Judge (retired), addressing plaintiffs' motion for a preliminary injunction and defendant's cross-motion to dismiss, *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 842 F.Supp.2d 672 (S.D.N.Y.2012), and can be briefly summarized.

AAA contends that certain toll increases within the Port Authority's Integrated Transportation Network ("ITN"),[1] which took effect on September 18, 2011, were enacted for improper purposes—specifically, to fund real estate development at the World Trade Center site, rather than to cover ITN capital needs—and violate the Commerce Clause of the United States Constitution and the Surface Transportation and Uniform Relocation Assistance Act of 1987 (the "Highway Act"), 33 U.S.C. § 508 (Complaint ("Compl.") (Docket Item 1) ¶¶ 1, 34–45). Plaintiffs argue that under *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Authority*, 567 F.3d 79, 86 (2d Cir.2009), such toll increases violate the dormant Commerce Clause because they do not bear a

"functional relationship" to the ITN, and, thus, do not represent a "fair approximation" of the use of ITN facilities and are "excessive in relation to the benefits conferred" on toll payers (Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction, dated September 26, 2011 (Docket Item 32) ("Pls.' P.I. Mem.") at 10). Accordingly, AAA contends that the tolls are not "just and reasonable" under the Highway Act, and are, therefore, illegal because they were enacted to fund projects that are not part of the ITN (Pls.' P.I. Mem. at 6–7, *citing Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 887 F.2d 417 (2d Cir.1989)). Plaintiffs sought a preliminary injunction to reverse the toll increases, and continue to seek declaratory as well as injunctive relief (Compl. ¶¶ 46–51).

Judge Holwell denied AAA's motion for a preliminary injunction and converted the Port Authority's cross-motion to dismiss into a motion for summary judgment, but reserved decision pending discovery. *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., supra*, 842 F.Supp.2d at 681. Discovery in this action has been limited "to Interstate Transportation Network Revenues and expenses for the years 2007 forward" (Docket Item 41) and "the reasons for the toll increases" (Docket Item 69 at 16–17).

### B. *The Instant Dispute*

Pursuant to Fed.R.Civ.P. 26 and Local Civil Rule 26.2(c), the Port Authority provided plaintiffs with a privilege log that identified withheld documents on a categorical, rather than an individual, basis. At issue here are eight categories of documents—numbers 17, 18, 19, 20, 24, 25, 26 and 27—with respect to which the Port Authority has claimed the deliberative process privilege.

AAA claims that the Port Authority's privilege log is deficient with respect to these eight categories because it fails "to provide the substantive information required by Fed. R.Civ.P. 26(b)(5) and S.D.N.Y. Local Rule 26.2 in a comprehensible form" (Letter from

---

1. The Interstate Transportation Network is comprised of "four bridges, the George Washington Bridge (including a bus station), the Bayonne Bridge, the Goethals Bridge, and the Outerbridge Crossing; two tunnels, the Lincoln Tunnel and

the Holland Tunnel; the bus terminal at 40th Street and 8th Avenue in Manhattan; the Port Authority Bus Programs; and the PATH railroad system." *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 887 F.2d 417, 418 (2d Cir.1989).

Kevin P. Mulry, Esq., dated February 27, 2013 ("Mulry Ltr.") at 2–3). AAA does not object to the Port Authority's use of a categorical log, but rather objects to the specific descriptions provided (Mulry Ltr. at 3). AAA claims that the log is deficient because (1) the log should contain more detailed descriptions of the withheld documents; (2) the log does not contain sufficient information for AAA to determine whether a document is predecisional and (3) the term "Client" is defined so broadly that it is meaningless (Mulry Ltr. at 3–4).

The Port Authority contends that its log is sufficiently detailed (Letter from Randy M. Mastro, Esq., dated March 4, 2013 ("Mastro Ltr.")). In support of this contention, the Port Authority points to the fact it provided AAA with additional information about the documents withheld on privilege grounds, including the total number of documents withheld in each category, additional descriptions of the type and subject-matter of documents withheld, year-by-year date ranges for certain categories, a list of all Port Authority counsel appearing on the privileged documents and clarification of the terms "Client" and "Client's In–House Counsel" (Ex. E to Mastro Ltr.).

I heard oral argument on AAA's objections to the privilege log on March 6, 2013. On March 11, 2013, the Port Authority submitted a supplemental privilege log that incorporated the additional details it had previously provided to AAA in separate materials.

## III. *Analysis*

### A. *Applicable Law*

#### 1. *Deliberative Process Privilege*

As explained below, the nature of the privilege asserted bears on the adequacy of the Port Authority's privilege log. Accordingly, it will be helpful to start with a brief discussion of the deliberative process privilege— the only privilege asserted with respect to the eight categories of documents in issue.

The deliberative process privilege was comprehensively described by the Honorable Richard J. Sullivan, United States District Judge, in *MacNamara v. City of New York*, 249 F.R.D. 70, 77–78 (S.D.N.Y.2008):

"The deliberative process privilege is designed to promote the quality of agency decisions by preserving and encouraging candid discussion between officials. It is based on 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir.2005) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001)). An "inter- or intra-agency document" may be subject to the privilege if it is both (1) "predecisional" and (2) "deliberative." *La Raza*, 411 F.3d at 356 (quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir.1999)) (additional internal citations omitted).

A document is predecisional "when it is prepared in order to assist an agency decisionmaker in arriving at his decision." *Tigue v. United States Dep't of Justice*, 312 F.3d 70, 80 (2d Cir.2002). The Second Circuit has noted some factors to consider in determining whether a document is "predecisional," including whether the organization asserting the privilege can (1) "pinpoint the specific . . . decision to which the document correlates" and (2) "verify that the document precedes, in temporal sequence, the 'decision' to which it relates." *Grand Cent. P'ship*, 166 F.3d at 482 (quoting *Providence Journal Co. v. United States Dep't of the Army*, 981 F.2d 552, 557 (1st Cir.1992)).

A document is deliberative when it is "actually . . . related to the process by which policies are formulated." *Grand Cent. P'ship*, 166 F.3d at 482 (citing *Hopkins*, 929 F.2d at 84) (additional citation and internal quotation marks omitted). In other words, "the privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." *Tigue*, 312 F.3d at 80 (internal quotation marks and citation omitted). Thus, the privilege "focus[es] on documents 'reflecting advisory opinions, recommendations and deliberations com-

prising part of a process by which governmental decisions and policies are formulated.'" *Grand Cent. P'ship,* 166 F.3d at 482 (quoting *Hopkins,* 929 F.2d at 84–85) (additional internal quotation marks and citation omitted). In particular, it is well-settled that "[d]raft documents, by their very nature, are typically predecisional and deliberative. They reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors." *Exxon Corp. v. Dep't of Energy,* 585 F.Supp. 690, 698 (D.D.C.1983) (internal quotation marks and citation omitted); *see also Nat'l Council of La Raza v. Dep't of Justice,* 339 F.Supp.2d 572, 573 (S.D.N.Y.2004) ("Drafts and comments on documents are quintessentially predecisional and deliberative.").

Nevertheless, a document is not "deliberative" where it concerns "purely factual" information regarding, for example, investigative matters or factual observations. *See Grand Cent. P'ship,* 166 F.3d at 482; *Hopkins v. U.S. Dep't of Hous. and Urban Dev.,* 929 F.2d 81, 85 (2d Cir.1991). "Thus, factual findings and conclusions, as opposed to opinions and recommendations, are not protected." *E.B. v. New York City Bd. of Educ.,* 233 F.R.D. 289, 292 (E.D.N.Y.2005) (internal quotation marks and citation omitted).

### 2. *Fed.R.Civ.P. 26 and Local Civil Rule 26*

Rule 26 of the Federal Rules of Civil Procedure provides that when a party withholds documents on the grounds of privilege, it must both "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A). In addition, Local Civil Rule 26.2 requires that a party asserting privilege in response to a document request provide:

(i) the type of document, *e.g.,* letter or memorandum; (ii) the general subject matter of the document; (iii) the date of

the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other . . .

Local Civil Rule 26.2(a)(2)(A); *see also United States v. Constr. Prods Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996); *S.E.C. v. Beacon Hill Asset Mgmt. LLC,* 231 F.R.D. 134, 144 (S.D.N.Y.2004) (Pitman, M.J.).

■ Local Civil Rule 26.2 also authorizes the use of a categorical privilege log and provides that "when asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category." Local Civil Rule 26.2(c). Although the Local Civil Rule does not define what information must be included in a categorical privilege log, Fed.R.Civ.P. 26 applies with the same force to a categorical log as it does to a traditional log that lists each document individually. Accordingly, a categorical privilege log is adequate if it provides information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,* 274 F.R.D. 106, 112 (S.D.N.Y.2011) (Scheindlin, D.J.) ("The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." (internal footnote and quotation marks omitted)); *City of N.Y. v. Grp. Health, Inc.,* 06 Civ. 13122(RJS)(RLE), 2008 WL 4547199 at *3 (S.D.N.Y. Oct. 10, 2008) (Ellis, M.J.) ("Litigants seeking to invoke the deliberative process privilege must, among other things, identify and describe the information or documents sought, and provide 'precise and certain' reasons for asserting confidentiality over the requested information." (internal citation omitted)); *Orbit One Commc'ns, Inc. v. Numerex Corp.,* 255 F.R.D. 98, 109 (S.D.N.Y.2008) (Francis, M.J.) ("Lowenstein must justify its assertion of privilege with regard to each category, and the description

of each category must provide sufficient information for Numerex to assess any potential objections to the assertions of attorney-client privilege.").

Therefore, the adequacy of a privilege log—whether categorical or document-by-document—must be measured with respect to the privilege asserted. As applied to the deliberative process privilege, this requires that the log contain sufficient information such that the reviewing party can make an intelligent determination as to whether the withheld documents are "predecisional" and "deliberative." *See S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 416 (S.D.N.Y. 2009) (Scheindlin, D.J.). Thus, a log of documents withheld on the basis of the deliberative process privilege should provide various pieces of information, including, but not limited to, a description of the decision to which the documents relate, the date of the decision, the subject-matter of the documents in issue, the nature of the opinions and analyses offered, the date that documents were generated, the roles of the agency employees who authored or received the withheld documents and the number of employees among whom the documents were circulated. These sort of details, while not exhaustive, would provide the receiving party with sufficient facts to assess whether the documents were "related to the process by which policies are formulated." *Nat'l Council of La Raza v. Dep't of Justice, supra*, 411 F.3d at 356.

Finally, an assessment of a categorical privilege log should also include a determination of whether a categorical log is appropriate in the particular case before the court. Even though Local Civil Rule 26.2 arguably permits categorical logs in all cases, the rule should be read in light of its purpose, which is to reduce the burden of individually identifying a large volume of documents. The Local Civil Rule's Committee Notes suggest that the rationale for the rule is the exponential growth in the size of document productions that have resulted from the use of computers, emails and similar devices and applications that generate electronically stored information: "[w]ith the advent of electronic discovery and the proliferation of e-mails and e-mail chains, traditional docu-

ment-by-document privilege logs may be extremely expensive to prepare, and not really informative to opposing counsel and the Court." Committee Note to Local Civil Rule 26.2. *See also Orbit One Commc'ns, Inc. v. Numerex Corp., supra*, 255 F.R.D. at 109 (permitting party to submit categorical log in order to "lessen the burden posed by reviewing and recording a large quantity of protected communications"); *Fifty–Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, 05 Civ. 1059, 2007 WL 1726558 at *8 (D.Nev. June 11, 2007) (permitting categorical privilege log where emails numbered in hundreds or thousands and "requiring Plaintiffs to provide a privilege log for each privileged email communication would be unduly burdensome and not serve the legitimate purposes of discovery under Fed.R.Civ.Pro. 26."); *In re Imperial Corp. of America*, 174 F.R.D. 475, 478–79 (S.D.Cal.1997) (authorizing categorical privilege log where document-by-document log would have been "unreasonable and unduly burdensome" given that there were thousands if not millions of documents that were subject to attorney-client privilege or work-product protection). Although there is a strong justification for a categorical log when thousands of documents have been withheld, there *is* some threshold below which the marginal utility of a categorical log is immaterial. For example, where the volume of withheld documents (in hardcopy format) could fit in a number 10 envelope, it would be difficult to justify a categorical log. Thus, the justification for a categorical log of withheld documents is directly proportional to the number of documents withheld.

With these principles in mind, I now address AAA's objections to the Port Authority's privilege log.

## B. *Application*

The Port Authority has provided a privilege log for the eight categories of withheld documents at issue that lists for each category the "Date," "Doc Type," "Authors," "Recipients," "Privilege Description" and "Privilege Reason." The log also groups these categories under specific decisions. An appendix defines certain terms used in the log, including "Client." AAA only challenges the

adequacy of the privilege log with respect to "Privilege Description," "Date," "Authors" and "Recipients." I conclude that certain aspects of the log provide sufficient detail, while other aspects are inadequate and need to be supplemented.

1. *Adequacy of "Privilege Description"*

I conclude that the "Privilege Descriptions" that the Port Authority has provided for the eight categories of withheld documents in issue are adequate.

I note at the outset that the label the Port Authority has used for this class of information is inaccurate. Under the column marked "Privilege Description," the Port Authority does not describe any privilege, but rather has provided the information about the documents that, in the Port Authority's view, supports the assertion of the privilege.

Category 17, includes "Communications, including e-mails and/or letters" related to "Advice Regarding the 2011 Proposed Toll and Fare Increases" from October 18, 2010 to August 19, 2011. The Port Authority describes these documents as:

> Non-public communications, including documents reflecting communications, reflecting internal deliberations and/or discussing, reflecting, or in furtherance of recommendations, draft documents, proposals, suggestions, and/or other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency, regarding the 2011 proposed toll and fare increases, including whether to raise the tolls and fares; the size of the toll and fare increases; and whether to implement an objective, financial-model based mechanism for future toll and fare increases.

Category 18 utilizes this same description for "Privileged Memoranda, White Paper reports drafted to help readers understand an issue facing the Port Authority, non-final versions of documents of various types that are covered by one of the claimed privileges, and/or other privileged documents that are not communications, memoranda or white papers."

 These descriptions provide an adequate basis for AAA to evaluate the Port Authority's assertion of the deliberative process privilege. The descriptions state that these documents reflected the personal opinions of their authors, rather than the stated policy of the agency. Moreover, the descriptions go beyond a generic recitation of the elements of the deliberative process privilege. They specifically identify the decision—the 2011 proposed toll and fare increases—and provide an overview of the opinions, options and recommendations that the Port Authority evaluated. This information is relevant in assessing whether the documents were created as part of the process by which the Port Authority makes decisions. While I express no opinion on whether the Port Authority has properly asserted the deliberative process privilege, I do find that the description of the documents' contents is sufficiently detailed.

The descriptions for the remaining challenged categories provide equivalent information. For example, category 24 asserts privilege with respect to "Advice Regarding ITN Capital Planning" and encompasses "Communications, including emails" from October 18, 2010 to June 5, 2012. It describes the contents of these documents as follows:

> Non-public communications, including documents reflecting communications, reflecting internal deliberations and/or discussing, reflecting, or in furtherance of recommendations, draft documents, proposals, suggestions, and/or other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency, regarding capital planning and/or expenditures by the Port Authority for the ITN, including which projects to include on the capital plan and the order of prioritization (deliberations ongoing during the relevant time period); formalization of the Port Authority's policies regarding transparency initiatives in relation to capital planning (approximate decision date: Jun. 5, 2012; documents generated Apr. 13, 2012–June 5, 2012); deliberations related to the drafting and approval of the Port Authority's 2011 Budget (approximate decision date: Dec. 7, 2010; documents generated Sep. 22, 2010–Oct. 27, 2010); delibera-

tions related to the drafting and approval of the Port Authority's Preliminary 2012 Budget (approximate decision date: Dec. 8, 2011; documents generated Apr. 1, 2011–Dec. 7, 2011); and approval or cancellation of capital expenditures projected for 2011, and/or determinations regarding whether to issue debt to fund said capital expenditures (deliberations ongoing during relevant time period).

Category 25 utilizes a virtually identical description, but applies to "Privileged memoranda, White Paper Reports drafted to help readers understand an issue facing the Port Authority, non-final versions of documents of various types that are covered by one of the claimed privileges, and/or other documents that are not communications, memoranda, or white papers."

As with Categories 17 and 18 above, the description here is adequate. It does more than offer a conclusory assertion that the privilege applies. It describes the specific decision at issue as well as the related "sub-decisions," the various factors and proposals that informed the decision-making process and the date ranges of the documents included within the category. This description provides enough specificity for AAA to evaluate how and whether the withheld documents relate to the process by which the decision was formulated.

I have carefully reviewed the remaining challenged categories—numbers 19, 20, 26 and 27—and conclude that the privilege descriptions are similarly adequate. As with the categories discussed above, the Port Authority identified the particular decision at issue, the subject-matter of proposals and options considered and the date ranges within which the documents were created. This information provides more than a simple recitation of the elements of the privilege and serves as an adequate basis for AAA to make an intelligent determination about the validity of the Port Authority's assertion of the deliberative process privilege.

Accordingly, no further supplementation of the "Privilege Description" is required for the eight challenged categories.

### 2. Adequacy of "Date" Information

■ Next, AAA claims that the date ranges for the withheld documents do not provide adequate information to determine when a decision was made or when the documents were created. I conclude the date information provided by the Port Authority is sufficient.

With respect to categories 17 and 18, the parties agreed at oral argument that the date ranges provided for these documents all predate the relevant decision. Accordingly, no further supplementation is warranted with respect to these categories.

With respect to the remaining challenged categories, the Port Authority has provided an overarching date range for each category and provided more specific date ranges for groups of documents encompassed within the particular category. In providing the dates that the documents within the categories were generated, the Port Authority has given AAA enough detail to assess whether these documents are "predecisional," i.e., whether they predate the relevant decision. I conclude, therefore, that this provides AAA with sufficient specificity to determine whether to challenge the assertion of the privilege.

Accordingly, no further supplementation of the dates in categories 19, 20, 24, 25, 26, 27 and 28 is necessary.

### 3. Adequacy of "Client" as Used in "Authors" and "Recipients"

■ Finally, AAA challenges the manner in which the Port Authority has defined "Client" and used it to describe the "Authors" and "Recipients" of the withheld documents. I conclude that the definition is inadequate because it is so broad that it ceases to be meaningful.[2]

As defined by the Port Authority, "[t]he term 'Client' means and refers to the Port Authority, its employees, commissioners, and/or individuals at the New York or New

---

**2.** The Port Authority also uses the term "Client's In–House Counsel" to describe "Authors" and "Recipients." This term is defined as "attorneys employed by the Port Authority, including" twen-

ty-eight specifically identified attorneys. AAA, however, does not object to the manner in which this term has been defined or used on the privilege log.

Jersey governors' offices in the course of their duties to oversee the Port Authority." This definition essentially sweeps in all employees of the Port Authority, without distinguishing the role that a particular author or recipient of a withheld document played at the Port Authority. An author or recipient's role is relevant because it is more likely that a relatively senior-level employee, as opposed to a more junior staffer, would be offering opinions and analyses to assist the agency official responsible for the formulation of significant public policy—the very process that the privilege protects. *See, e.g., In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.,* 643 F.Supp.2d 439, 443 (S.D.N.Y.2009) (noting that "a high-level agency official is more likely to be involved in the decisionmaking process"); *Otterson v. Nat'l R.R. Passenger Corp.,* 228 F.R.D. 205, 208 (S.D.N.Y.2005) (Kaplan, D.J.) ("[T]he deliberative process privilege applies only 'in the context of communications designed to directly contribute to important public policy.'" (internal citation omitted)); *Kaufman v. City of New York,* 98 Civ. 2648(MJL)(KNF), 1999 WL 239698 at *4 (S.D.N.Y. Apr. 22, 1999) (Fox, M.J.) ("[R]outine operating decisions are not transformed into the high-level policy determinations that the governmental deliberative process privilege seeks to protect simply because the routine decisions are made at government agencies."); *see also Grand Cent. P'ship v. Cuomo, supra,* 166 F.3d at 482 (the deliberative process privilege does not protect documents that are "merely peripheral to actual policy formulation"). A blanket representation that "Client" includes all employees of the Port Authority does not reveal whether the authors and recipients would have been in a position to have been involved in the decision-making process surrounding high-level policy determinations.[3] Without some specificity as to where the "Authors" and "Recipients" fall on the Port Authority's hierarchy, AAA is unable to assess fully the assertion of the privilege.

Moreover, in assessing the applicability of the deliberative process privilege, the rela-tionship between the authors and recipients of the document is relevant. The universe of employees that were privy to the documents informs the evaluation of whether these individuals are involved in "the process by which policies are formulated." *Grand Cent. P'ship, Inc. v. Cuomo, supra,* 166 F.3d at 482. The broad definition of "Client" provides AAA with no meaningful basis to assess the relationships between the authors and recipients of the withheld documents. In addition, this definition does not indicate the number of individuals who are included within the term "Client" for a particular category. This information is relevant because the extent to which a document was circulated at the Port Authority can illuminate whether that document assisted in the decision-making process. If the documents were circulated among a small universe of employees, it is more likely that the document was designed to assist in the decision-making process as the number of employees involved in this process is likely to be discrete and limited. Without any understanding of the number of individuals involved, AAA is deprived of a source of information relevant to its assessment of the deliberative process privilege.

Accordingly, the Port Authority is directed to supplement its index by providing the number of individuals that comprise the "Authors" and "Recipients" of each of the eight challenged categories. If there are ten or fewer individuals, the Port Authority is directed to specifically identify these individuals. This limited supplementation is appropriate given that the purpose of categorical privilege logs, as detailed above, is to reduce the potential burdens imposed by a document-by-document privilege log in cases involving high volumes of privileged material. If there are only a relatively small number of individuals encompassed within the term "Client" as it is used in each of the challenged categories, the risk of burdensomeness is low and the efficiencies associated with a categorical log are not as compelling. If there are more than ten individual "Authors" or "Recipients" in any category, the Port Authority is to identify, by name and title, the most highly placed individual and

---

**3.** Although the Port Authority proffered at oral argument that all the individuals encompassed within "Client" are relatively high-level employ-ees at the Port Authority, it has not made this limitation apparent in its definition of the term in its privilege log.

the least highly placed individual with respect to each category.

Finally, the Port Authority is directed to supplement its privilege log further by providing the number of documents encompassed within each of the eight challenged categories. The Port Authority did provide this information in a letter to AAA (Ex. B to Mastro Ltr.) and stated at oral argument that the eight categories encompass approximately 200 documents. Nonetheless, a listing of the number of documents withheld on the log itself will streamline AAA's evaluation and provide it with a more fulsome record to assess the privilege.

## IV. *Conclusion*

For the reasons set forth above, the Port Authority shall supplement its privilege log as directed in this Opinion and Order.

SO ORDERED.

