337 F.Supp.2d 524 (2004)
NATIONAL COUNCIL OF LA RAZA, et al., Plaintiffs,
v.
DEPARTMENT OF JUSTICE, Defendant.
No. 03 Civ.2559 LAK.
United States District Court, S.D. New York.
September 24, 2004.
*525 Christopher Dunn, Arthur Eisenberg, Donna Lieberman, New York Civil Liberties Union Foundation, New York City, for Plaintiffs.
Lucas Guttentag, Omar C. Jadwat, American Civil Liberties Union Foundation, New York City, for Plaintiffs.
Sara Campos, New York City, for Plaintiffs.
Michael J. Wishnie, ACLU Immigrants' Rights Project, New York City, for Plaintiffs.
James B. Comey, United States Attorney, Sarah S. Normand, Peter D. Keisler, Elizabeth J. Shapiro, New York City, for Defendant.

MEMORANDUM OPINION
KAPLAN, District Judge.
Plaintiff advocacy organizations[1] brought this action under the Freedom of *526 Information Act[2] ("FOIA" or the "Act") to compel the Department of Justice ("Department") to produce certain records relating to the Department's position on the authority of state and local police to enforce immigration laws. The Department asserts that the documents fall within 5 U.S.C. § 552(b)(5) ("Exemption 5"), which exempts from the Act's disclosure requirements "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Specifically, the Department asserts that the requested documents are protected by the deliberative process privilege and the attorney-client privilege. The matter is before the Court on the Department's motion for summary judgment dismissing the complaint.

Facts

A. Background
The facts are essentially undisputed. The plaintiffs made the FOIA requests that gave rise to this lawsuit after the Department of Justice seemingly changed its position on the authority of state and local police to enforce federal immigration laws. In 1996, the Department's Office of Legal Counsel ("OLC") issued a lengthy legal opinion concluding, among other things, that states have the authority to detain aliens in order to enforce the criminal provisions of the immigration laws but lack legal authority to detain aliens for the purpose of civil deportation proceedings.[3] The OLC is a component of the Department of Justice that renders legal advice to the Attorney General.[4] The Department says, and plaintiffs do not dispute, that the Department publishes only a small fraction of the OLC's opinions.[5] The 1996 opinion was published.[6]
In 2002, the Department of Justice announced a new policy pursuant to which the federal government would call upon state and local police to assist in the enforcement of immigration laws. On June 5, 2002, Attorney General John Ashcroft held a press conference to announce the National Security Entry-Exit Registration System ("NSEERS"), a program for tracking foreign visitors to the United States.[7] He explained that, as part of the system, aliens who violate registration requirements or visa terms will be entered into the National Crime Information Center ("NCIC"), a database regularly used by state and local police officers.[8] The Attorney General then stated:
"When federal, state and local law enforcement officers encounter an alien of national security concern who has been listed in the NCIC, this criminal information system, federal law permits them to arrest the individual and transfer the individual to the custody of the INS. The Justice Department's Office of Legal Counsel has concluded that this narrow, limited mission we are asking state and local police to undertake voluntarily ... is within the inherent authority of the states."[9]
The OLC conclusion mentioned by the Attorney General is reflected in an April 2002 opinion of the OLC, which concluded *527 that states have the authority to enforce civil provisions of the immigration laws.[10] The defendant says, and plaintiffs offer no direct evidence to refute, that the April 2002 opinion has not been circulated outside the Executive Branch.[11] According to the declaration of M. Edward Whelan III, the Principal Deputy Assistant Attorney General for the Office of Legal Counsel, the opinion and a related OLC memorandum issued in March 2002 "have been shared only with government officials and staff working on these issues and closely held by them in strict confidence."[12] Nonetheless, the Department referred to the OLC documents in a series of public statements.
In March 2003, the Attorney General responded to a letter from one of the plaintiffs, which inquired into the authority of state and local law enforcement officers to arrest aliens who have violated civil provisions of the immigration laws. The Attorney General wrote, among other things:
"Let me first state clearly the policy of the Department on this issue. The Department's Office of Legal Counsel (OLC) previously opined that state and local law enforcement officials have inherent authority to make arrests for criminal immigration law violations generally. It has now additionally opined that they possess inherent authority to arrest individuals whose names have been entered into the [NCIC].... Thus, when state and local law enforcement officers encounter an alien who poses special risks and has been listed in the NCIC database for violating the [Immigration and Nationality Act], they may arrest that individual and transfer him to the custody of the Immigration and Naturalization Service (INS). The policy and the authority are no broader than this...."[13]
In May 2003, the Attorney General and one of his subordinates, the Acting Assistant Attorney General for Legislative Affairs, responded in similar terms[14] to inquiries from the Boston Police Department, a U.S. Representative, and the U.S. House of Representatives Committee on the Judiciary.[15] The letter to the Boston Police Department elaborated slightly on the extent of the states' authority in the area of civil immigration enforcement.[16]
In June 2003, Kris W. Kobach, Counsel to the Attorney General,[17] delivered remarks at a meeting of the FBI's Criminal Justice Information Services Advisory Policy Board. The meeting was attended by nearly 140 people, including state and local law-enforcement officials and representatives of private industry.[18] Kobach referred *528 several times to an OLC opinion.[19] At the beginning of his presentation he described the opinion:
"What I'd like to do just to sort of summarize what I'm going to say is give you a very quick overview of the Office of Legal Counsel opinion.... I don't want to get too much into the legalese of this, but [OLC found that] there [is] no federal preemption of state and local assistance for civil violations of the Act versus criminal violations of the Act. In addition, there were several Circuit court opinions in the 10th U.S. Court of Appeals, and that also raised the question... that perhaps we need to resolve this issue and just clear up the ambiguity. In a nutshell [OLC] concluded that there is no federal preemption, there is no difference between civil and criminal with respect to whether state laws are preempted.... [T]he authority to make such arrest is an inherent authority possessed by the states."[20]
Later in his presentation, Kobach stated:
"As far as the civil-criminal assumption, there really isn't any legal fiber underneath it in the immigration law, at least. And so in the OLC opinion it came out very clearly, and the Attorney General did announce the summary of what that opinion is ... in one of his speeches on June of 2002."[21]

B. The FOIA Requests and this Action
Plaintiffs submitted two FOIA requests.[22] The first request, dated August 21, 2002, stated that recent reports, documents, and events suggested three conflicting positions on the authority of state and local police to enforce civil immigration law.[23] The requesters asked the Department "to clarify the situation and share with us the Office of Legal Counsel's most recent legal opinion...."[24] The Department responded that it had located two responsive documents but that it was withholding them under Exemption 5 because the documents are protected by the deliberative process privilege.[25] One of the OLC opinions was dated March 11, 2002.[26] The other, dated April 3, 2002, is apparently the one to which Department officials have referred in public statements.[27] Plaintiffs administratively appealed the decision, but the appeal was denied.[28]
The second request, dated March 5, 2003, asked for:
"[A]ll records in the offices of the Attorney General, the Deputy Attorney General, and the Associate Attorney General, and all Office of Legal Counsel records, that:
1. constitute the basis for the Attorney General's press conference statement regarding the inherent authority of the *529 states to arrest aliens who have violated the civil provisions of the Immigration Act;[29]
2. set forth, refer to or discuss the Attorney General's above-referenced statement regarding the authority of the states to enforce the civil provisions of the immigration laws; or
3. communicate to state or local law enforcement agencies the Department of Justice's position on the enforcement of civil provisions of the immigration laws by state or local officials, as announced in the Attorney General's above-referenced statement."[30]
On April 14, 2003,[31] plaintiffs brought this action, alleging that the Department's response to the first request violated the FOIA's disclosure requirements.[32] On April 29, 2003, the plaintiffs submitted an amended complaint that challenged the Department's response to the second request.[33]
The Department responded to the second FOIA request on July 2 and 3, 2003,[34] identifying but withholding twenty-four[35] documents in full, releasing seven documents in full, and releasing four documents in part.[36] The Department based all of the withholdings on Exemption 5.[37] The Department has produced a Vaughn index[38] of which the final version contains 28 documents.[39] The documents identified in the index, in addition to the two OLC opinions, consist of drafts of a letter, a draft of a policy option paper, drafts of a memorandum, drafts of "talking points," a policy option paper, and email messages.[40]
*530 The matter now is before the Court on defendant's motion for summary judgment.

Discussion
The major issues are whether the OLC memoranda are protected by the deliberative process privilege; whether, if the memoranda are so protected, the Department waived the privilege with respect to one of the memoranda; whether certain email messages qualify for the deliberative process privilege; and whether the Department has released all segregable non-exempt material.

A. The Summary Judgment Standard
Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[41] It is the movant's burden to show that no genuine factual dispute exists.[42] When a party moves for summary judgment, the court on its own initiative may grant summary judgment for the other party if "it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court" and "those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law."[43]
The Second Circuit has explained that to prevail on a motion for summary judgment in a FOIA case, the defending agency:
"has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA. Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden."[44]
Furthermore, affidavits and declarations "submitted by an agency are `accorded a presumption of good faith,'" and once an agency has satisfied its burden with affidavits, a plaintiff may not obtain further discovery unless it makes "a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations."[45]

B. The Deliberative Process Privilege
FOIA "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies."[46] The statute's exemptions *531 from the basic disclosure requirement "are to be narrowly construed with all doubts resolved in favor of disclosure."[47]
At issue in this case is Exemption 5, which applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[48] It generally has been interpreted as protecting documents that "fall within the ambit of a privilege against discovery" that the agency would be able to assert in civil litigation against the agency.[49] Here, the Department asserts that the withheld documents all fall within the ambit of the deliberative process privilege,[50] which covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."[51]
To qualify for the deliberative process privilege, an agency document must be "predecisional" and "deliberative."[52] A document is predecisional when it is "prepared in order to assist an agency decisionmaker in arriving at his decision."[53] The privilege thus protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."[54] Some courts have held that a document will be considered predecisional if the agency can "pinpoint the specific agency decision to which the document correlates" and "verify that the document precedes, in temporal sequence, the `decision' to which it relates."[55] A document is deliberative when it is "actually related to the process by which policies are formulated."[56] Courts have looked to factors such as whether "the document (i) formed an essential link in a specified consultative *532 process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency."[57] Applying these principles to the undisputed facts, the Court finds that all but three of the withheld documents are within the scope of the deliberative process privilege.

1. The OLC Memoranda
The parties' greatest disagreement centers on whether the Department of Justice is required to disclose the March and April 2002 OLC memoranda, especially the latter, which appears to be the one that Department of Justice officials have mentioned publicly.[58] The March memorandum was submitted to Deputy Attorney General Larry D. Thompson, the April memorandum to Attorney General John Ashcroft.[59] According to the declaration of M. Edward Whelan III, the Principal Deputy Assistant Attorney General for the OLC, the memoranda consist of "legal advice and analysis requested by the Offices of the Attorney General and Deputy Attorney General for the consideration of the Attorney General and Deputy Attorney General."[60] The subject of the memoranda is "the scope of the authority of state and local law enforcement officials to assist the Immigration and Naturalization Service."[61]
These documents are predecisional and deliberative. They are predecisional because they were prepared not to announce agency policy but to provide the agency decisionmakers with legal analysis related to future decisions the agency might have to make. The documents are deliberative because they reflect the conclusions of the OLCthe function of which is not to make official Department policy, but to advise the Attorney General on the lawregarding the legality of one or more courses of action that the Attorney General could take.
Plaintiffs argue that "[t]here is reason to believe that the policy decision had already been made by the time the OLC memo was written and, far from being predecisional, the memo constitutes the post-hoc justification for the Department's change in policy."[62] They cite only (1) a press report suggesting that the OLC changed its position on the underlying legal question between November 2001 and April 2002, and (2) an anonymously-sourced press report stating that the Attorney General intended to "unveil" the OLC's April opinion on April 3, 2002, the same day the OLC opinion was actually completed.[63]
This evidence is rank hearsay. Even if it were admissible, it would not call into question the Court's conclusion that the OLC opinions qualify for the deliberative *533 process privilege. Item (1) shows practically nothing, and item (2) tends to show only that the opinion was part of a process of agency decision-making. The Attorney General never did "unveil" his opinion on that April date, nor do the materials before the Court show that the Attorney General made use of that opinion in any way before that date or indeed, before the June 5, 2002 announcement of the NSEERS. The more reasonable inference is that, on the date the opinion was issued, the Attorney General still had not made any decisions regarding the subject of the memorandum.
The Court recognizes that in a government agency, as in any working environment, advice is not always rendered in an impartial spirit. Legal conclusions might well be tailored to what the legal advisor understands the decision-maker's preferences to be. It is easy to imagine a scenario in which OLC was asked to find a legal basis for a course of action that the Attorney General already was interested in pursuing. But even if that is what happened, the documents issued by OLC in response to such a request still would be covered by the deliberative process privilege. Because these memoranda preceded, and could be used to support, the agency's adoption of policies regarding state and local assistance in enforcing immigration laws, the documents still would be part of the internal "give-and-take of the consultative process"[64] even if they were designed to justify a plan of action already being considered by senior officials.
Indeed, documents analogous to the OLC memoranda at issue herenamely documents containing in-depth legal analysis of a definitive characterhave usually been found to qualify for the deliberative process privilege. The Second Circuit held that memoranda from the Federal Power Commission's general counsel containing "legal analysis and recommendations, legal conclusions, and policy recommendations" were protected from disclosure under Exemption 5 because these items were part of the agency's deliberative process and not final orders.[65] Similarly, in Brinton v. Department of State,[66] the D.C. Circuit considered a FOIA request for legal opinions prepared by the State Department's Office of the Legal Adviser. The court held that the documents, so long as not adopted or incorporated as working law, were not "final opinions" and therefore were protected by the deliberative process privilege: "There can be no doubt that such legal advice, given in the form of intra-agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative process rationale for Exemption 5."[67] Furthermore, at least two decisions involving OLC memoranda found those documents protected by the deliberative process privilege.[68]
Plaintiffs have failed to raise an issue of fact as to whether the OLC opinions were *534 part of a deliberative process. Accordingly, the Court holds that both OLC opinions are within the scope of the deliberative process privilege. The plaintiffs' contention that defendant waived the privilege with respect to the April 2002 opinion is treated below.

2. Other documents
Documents 1 through 22[69] consist of drafts of, and comments on, a "policy option" paper, a letter, a memorandum, and a set of "talking points," as well as a final version of a "policy option paper."[70] Drafts and comments on documents are quintessentially predecisional and deliberative.[71] Indeed, plaintiffs have not disputed that these documents are covered by the deliberative process privilege.
Documents 23 through 26 consist of email messages withheld in part or full. Document 23 was sent from an official in the Justice Management Division to officials in the Deputy Attorney General's Office and the Office of Legislative Affairs and inquires as to whether the OLC's 2002 memorandum will be made publicly available.[72] Documents 24 and 25 are email messages from an official in the Immigration and Naturalization Service to officials in the Deputy Attorney General's Office and an OLC official.[73] They deal with three issues: "One question concerns whether the OLC opinion will be published and the other two relate to how state and local law enforcement officers would operate under the new mission that was requested of them by the Department of Justice."[74]
Documents 23 through 25 are not clearly either predecisional or deliberative. These emails were not "prepared in order to assist an agency decisionmaker in arriving at his decision," and they are not "actually related to the process by which policies are formulated."[75] According to the Department's declarations, all these emails do is inquire as to agency policies. But an inquiry about a policy is not the same thing as a step in the formulation of that policy. "`[T]he privilege does not protect a document which is merely peripheral to actual policy formulation; the record must bear on the formulation or exercise of policy-oriented judgment.'"[76] The defendant's declarations, when viewed in the light most favorable to the plaintiffs, do not carry defendant's burden of showing that these documents qualify for the deliberative process privilege.[77] A district court has the discretion to examine records in camera to determine whether the documents qualify for a FOIA exemption if *535 the question cannot be otherwise resolved.[78] Since the Court cannot determine from the evidence before it whether the deliberative process privilege properly applies, the defendant will produce documents 23, 24, and 25 for in camera inspection.
Document 26 is a group of email messages that were exchanged on June 5, 2002 among M. Edward Whelan III, Viet Dinh, Kris W. Kobach, and Jay Byee, all officials in the Department of Justice.[79] According to the defendant's brief and a slightly enhanced Vaughn index submitted with the defendant's reply memorandum, the messages contain a request by Kobach to Dinh and Bybee for comments on a portion of the Attorney General's draft remarks on the National Security Entry-Exit Registration System, two requests by Dinh to Bybee, Kobach and Whelan "for legal advice on authority of state and local police," and "two responses by OLC to the legal questions posed."[80]
This exchange qualifies for the deliberative process privilege. The comments on the draft of the Attorney General's remarks are like any other drafts and comments produced and exchanged before a final version is released. The requests for legal advice and responses to those requests qualify for the same reasons that the March and April OLC memoranda qualify.
Plaintiffs argue also that the defendant has not justified its decision to exclude from the Vaughn index ten additional emails that the Department told the plaintiffs "contain[] the same excerpt" as one of the released documents.[81] Plaintiffs appear to be looking for an assurance that the ten documents are identical to one already produced. In a declaration submitted with the defendant's reply papers, Melanie Pustay, who had responsibility for the processing of plaintiffs' FOIA request, affirmed that "[t]he other ten copies of the May 6, 2003 email are identical to the one released."[82] Under the presumption of good faith accorded agency declarations, the defendant has satisfied its burden of showing that it has not improperly withheld these emails.

C. Waiver
The Court's holding that the April 2002 memorandum (Document 28) qualifies for the deliberative process privilege does not dispose of the matter, as plaintiffs argue that the Department waived its privileges for that document. When an agency adopts a predecisional document or incorporates it by reference into a final decision, the rationale for the deliberative process privilegenamely, protecting the quality of agency decision-making ex ante by facilitating the candid exchange of ideasevaporates.[83] Moreover, once a document has become part of an agency's decision, the public has a much greater interest in the disclosure of that document.[84] The D.C. Circuit has observed that "even if [a] document is predecisional at the time it is prepared, it can lose that *536 status if it is adopted, formally or informally, as the agency's position on an issue or is used by the agency in its dealings with the public."[85] It has explained also that in "FOIA cases where a decision-maker has referred to an intra-agency memorandum as a basis for his decision," the D.C. Circuit requires disclosure of the memorandum, "for, once adopted as a rationale for a decision, the memorandum becomes part of the public record."[86] Consequently, when an agency "chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5," the agency waives its privileges for that memorandum.[87]
By these standards, the April 2002 memorandum must be produced. The Attorney General and his representatives repeatedly and deliberately have invoked the April 2002 memorandum to justify their decision to seek cooperation from state and local police in enforcing civil deportation laws. At the June 2002 press conference, the Attorney General referred to the OLC's conclusions in an attempt to reassure listeners that the new mission to be asked of states is within the states' inherent authority. The March 2003 letter describes the OLC position as a "policy." The submissions that the Acting Assistant Attorney General for Legislative Affairs sent to members of Congress in May 2003 referred expressly to the April 2002 opinion as a legal basis for the cooperation from states that the Department was seeking to foster. In June 2003, Kris Kobach, Counsel to the Attorney General, gave what he described as an "overview" of the April 2002 opinion, including the opinion's genesis and some of its legal analysis, in remarks at a meeting of the Advisory Policy Board of the FBI's Criminal Justice Information Services Division. The meeting was attended by representatives of state and local law-enforcement agencies and private industry in addition to the federal government. Kobach's comments were obviously intended to reassure attendees that the Department had found a legal basis for the cooperation it was seeking.
The defendant's attempts to refute the common-sense conclusion that the April 2002 OLC opinion has been incorporated into Department policy are unpersuasive.
First, defendant argues that Department officials never have actually mentioned the April 2002 opinion. "[N]either the Attorney General nor the Counsel to the President," it says, "explicitly made reference to the OLC memoranda."[88]
This contention lacks merit. While the Attorney General may not have referred explicitly to the OLC memoranda, the Acting Assistant Attorney General for Legislative Affairs did so twice in submissions to *537 Congress, and the Attorney General's counsel did so in a speech to about 140 people.[89]
Defendant's main argument resisting waiver is that "reference to a report's conclusions" is different from "adoption of its reasoning, and it is the latter that destroys the privilege."[90] It argues that only the former occurred in this case. Defendant has misconstrued the line of cases on which it relies and confused two very different kinds of "reference[s] to a report's conclusions."
The cases that distinguish reference to a conclusion from adopting the reasoning behind that conclusion generally contemplate a situation in which an agency first receives a recommendation contained in a predecisional document and later chooses to follow the recommended course of action, but for reasons entirely different from the ones contained in the predecisional document.[91] Or, in a related vein, an agency might refer casually to a document's conclusions without adopting those conclusions or the analysis behind them.[92] In both situations, the document has not become part of agency policy, and so the agency retains the deliberative process privilege.
Those situations are very different from the one here. In this case, the Department of Justice consistently has justified its new policy on state cooperation with reference to the OLC's advice. Indeed, the Department is relying on the OLC opinion as the sole legal authority for that policy. In other words, the Department has not merely referred casually to the OLC's conclusion regarding the inherent authority of the states; on the contrary, the Department has adopted that conclusion on the strength of the very reasons stated in the opinion. The Department's view that it may adopt a legal position while shielding from public view the analysis that yielded that position is offensive to FOIA. As the Supreme Court has explained:
"The public is only marginally concerned with reasons supporting a policy which an agency has rejected, or with reasons which might have supplied, but did not supply, the basis for a policy which was actually adopted on a different ground. In contrast, the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted. These reasons, if expressed within the agency, constitute the `working law' of the agency...."[93]
In American Society of Pension Actuaries v. IRS, the court ordered the disclosure of deliberative documents containing the *538 "analytic backup" for a budget estimate ultimately adopted by the agency because those documents "`embod[ied] the agency's effective law and policy.'"[94] Here, too, the Department of Justice must disclose the "analytical backup" to a legal conclusion that it has adopted as official policy. This truly is a situation in which "scrutiny of the memorandum as a whole is invited in order to assess the strength of the reasoning that was behind the quoted legal conclusions."[95]

D. Release of Segregable Non-exempt Material
Plaintiffs argue that the government's declarations are not sufficient to establish that the the Department has disclosed all segregable non-exempt material.[96] The Department, however, has described each of the withheld documents with "reasonable specificity"[97] in its Vaughn index. The Court is convinced from these descriptions and from the agency's declarations that the defendant has carried its burden of demonstrating that all reasonably segregable non-exempt material has been disclosed. In the absence of a showing of bad faith or some other reason to question the agency's declarations,[98] the Court denies the plaintiffs' request for further discovery and for in camera review of all the withheld documents.

Conclusion
The defendant's motion for summary judgment dismissing the complaint [docket item 11] is granted to the extent that the plaintiffs' first claim for relief is dismissed insofar as it relates to documents numbered 1 through 22 inclusive, 26, and 27. The motion for summary judgment is denied in all other respects.[99] The defendant is directed to produce documents 23 through 25, on or before October 12, 2004, for in camera inspection. Plaintiffs are entitled to summary judgment with respect to document 28, and the defendant is directed to produce that document on or before October 12, 2004.
SO ORDERED.
NOTES
[1] The plaintiffs are National Council of La Raza, American Civil Liberties Union, New York Immigration Coalition, National Employment Law Project, American Immigration Lawyers Association, National Immigration Law Center, National Immigration Forum, National Immigration Project of the National Lawyers Guild, and Massachusetts Immigrant and Refugee Advocacy Coalition.
[2] 5 U.S.C. § 552 (2004).
[3] Jadwat Decl. Ex. A.
[4] Def. 56.1 St. ¶ 1.
[5] Id. ¶¶ 4, 6.
[6] Assistance by State and Local Police in Apprehending Illegal Aliens, 20 Op. Off. Legal Counsel 26 (1996), available at http://www.usdoj.gov/olc/immstopola.htm.
[7] Def. 56.1 St. ¶¶ 13-14.
[8] Id. ¶¶ 15-17.
[9] Id. ¶¶ 18, 20; Normand Decl. Ex. D at 2.
[10] Def. 56.1 St. ¶¶ 8, 10; Jadwat Decl. Ex. I, Ex. K at 5. See also Jadwat Decl. Ex. A at 19 (1996 opinion now contains an editor's note saying that "in 2002, the Office of Legal Counsel withdrew the advice set forth in th[e] section" concluding that states have the authority to enforce civil provisions of immigration laws).
[11] Def. 56.1 St. ¶ 11. The plaintiffs challenge this assertion, Pl. 56.1 St. ¶ 1, but they cite no admissible evidence tending to show that the memoranda were actually shown to anyone outside the Executive Branch. See id.; Jadwat Decl. Exs. B, C, D, L.
[12] Whelan Decl. ¶ 13.
[13] Jadwat Decl. Ex. H.
[14] One difference is that unlike the March 2003 letter, the documents sent in May did not characterize the Department's position as a "policy." Jadwat Decl. Ex J. at 2, Ex. K at 4-5.
[15] Jadwat Decl. Ex. I, Ex. J at 2-3, Ex. K at 4-5.
[16] Jadwat Decl. Ex. J.
[17] See Supp. Normand Decl. Ex. A at 11.
[18] Jadwat Decl. Ex. L App. B.
[19] Third Jadwat Decl. Ex. C at 1-4, 10, 28; Jadwat Decl. Ex. L at 11.
[20] Third Jadwat Decl. Ex. C at 1-3.
[21] Id. at 28.
[22] The first request was submitted by a group of 34 organizations that included all but two of the plaintiffs. Def. 56.1 St. ¶ 27 & n. 2. The second request was submitted by the American Civil Liberties Union Foundation on behalf of a group of organizations that included all but one of the plaintiffs. Def. 56.1 St. ¶ 38 & n. 3.
[23] Id. ¶ 27; Pustay Decl. Ex. A.
[24] Def. 56.1 St. ¶ 28; Pustay Decl. Ex. A at 2.
[25] Def. 56.1 St. ¶ 30-34; Whelan Decl. Ex. B.
[26] Normand Decl. Ex. K at 10.
[27] See id. at 11; Jadwat Decl. Ex. I, Ex. K at 5.
[28] Def. 56. 1 St. ¶¶ 35-37.
[29] According to the defendant, the plaintiffs agreed to narrow item number one of their request "to exclude inter- or intra-agency drafts and inter- or intra-agency comments on or about such drafts." Def. 56.1 St. ¶¶ 44. In fact, the defendant does not support this point with evidence. See S.D.N.Y. R. 56.1(d). The documents cited in the defendant's Rule 56.1 statement show only that the Department requested such a limitation, not that plaintiffs actually agreed to it. Pustay Decl. Ex. F; Normand Decl. Ex. H. Since the plaintiffs have not made an issue of this discrepancy, neither will the Court.
[30] Id. ¶¶ 38-39; Pustay Decl. Ex. E.
[31] At that point the Department had not finished processing the second request, Def. 56.1 St. ¶ 43, but the Department has conceded that plaintiffs exhausted their administrative remedies with respect to both requests. Answer ¶ 41. See also 5 U.S.C. § 552(a)(6)(A), (C) (a requester is deemed to have exhausted administrative remedies if an agency does not respond to the request within 20 days).
[32] Compl.
[33] Def. 56.1 St. ¶ 53; Am. Compl. The complaint states two causes of action. The first, based on 5 U.S.C. § 552(a)(3), alleges that the Department improperly withheld records requested by the plaintiffs. As amended, the second cause of action, which is based on FOIA's requirements of affirmative disclosure to the public at large, alleges that "[d]efendant's failure to make its new policy documents available to the public" violates 5 U.S.C. § 552(a)(1)-(2). Am. Compl. ¶¶ 44, 46. See note 99 infra.
[34] The second FOIA request was processed by two offices within the Department. The Office of Information and Privacy handled the search for records in the Offices of the Attorney General, the Deputy Attorney General, and the Associate Attorney General. The OLC handled the search for its own records. Def. 56.1 St. ¶¶ 30-37; 40-51.
[35] Two of these were the OLC opinions identified in response to the first request. Def. Br. at 9 n. 6. One is an email exchange that consists of five documents. Supp. Normand Decl. Ex. A at 11.
[36] Def. 56.1 St. ¶¶ 47, 49, 51.
[37] Id. ¶¶ 50-51.
[38] See Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir.1973).
[39] Normand Decl. Ex. K.
[40] Id. See also Def. 56.1 St. ¶ 58.
[41] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also FED. R. CIV. P. 56(c).
[42] Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir.2003).
[43] Ramsey v. Coughlin, 94 F.3d 71, 74 (2d Cir.1996); Coach Leatherware Co. v. AnnTaylor, Inc., 933 F.2d 162, 167 (2d Cir.1991); see also Am. Soc. of Pension Actuaries v. IRS, 746 F.Supp. 188, 192 (D.D.C.1990) (awarding partial summary judgment to plaintiffs in FOIA case even though plaintiffs had not moved for summary judgment because record showed unambiguously that the agency had incorporated deliberative documents into policy and therefore the documents were no longer within Exemption 5).
[44] Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir.1994) (citations omitted); see also U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n. 3, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) (burden is on agency to demonstrate that requested materials were properly withheld).
[45] Carney, 19 F.3d at 812 (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C.Cir.1991)); see also Grand Cent. P'ship v. Cuomo, 166 F.3d 473, 478 (2d Cir.1999).
[46] Halpern v. FBI, 181 F.3d 279, 286 (2d Cir.1999).
[47] Local 3, Int'l Bhd. of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir.1988); accord Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001); Tax Analysts, 492 U.S. at 151, 109 S.Ct. 2841 (the exemptions "have been consistently given a narrow compass"); Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir.2002).
[48] 5 U.S.C. § 552(b)(5) (2004).
[49] Klamath Water Users Protective Ass'n, 532 U.S. at 8, 121 S.Ct. 1060; accord United States v. Weber Aircraft Corp., 465 U.S. 792, 799, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984); NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148-49, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).
[50] The government asserts also that the OLC memoranda, as well as Document 26, which consists of an email exchange among OLC attorneys and other Justice Department officials, are protected by the attorney-client privilege. Def. Br. at 31-33. Because the Court finds that any privilege has been waived with respect to the April 2002 OLC memorandum and that the other two OLC documents are protected by the deliberative process privilege, see infra, the Court need not reach the question of whether the attorney-client privilege applies to those documents.
[51] Sears, Roebuck, 421 U.S. at 150, 95 S.Ct. 1504 (internal quotation marks omitted); accord Klamath Water Users Protective Ass'n, 532 U.S. at 8, 121 S.Ct. 1060.
[52] Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir.2002); Local 3, Int'l Bhd. of Elec. Workers, 845 F.2d at 1180.
[53] Hopkins v. U.S. Dep't of Housing & Urban Dev., 929 F.2d 81, 84 (2d Cir.1991) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975)); accord Grand Cent. P'ship v. Cuomo, 166 F.3d 473, 482 (2d Cir.1999).
[54] Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C.Cir.1980); accord Tigue, 312 F.3d at 80; Grand Cent. P'ship, 166 F.3d at 482.
[55] Grand Cent. P'ship, 166 F.3d at 482 (internal quotation marks and citations omitted).
[56] Id.
[57] Id.
[58] The March and April memoranda are respectively labeled Documents 27 and 28 in the Department's Vaughn index. Normand Decl. Ex. K at 10-11.
[59] Def. 56.1 St. ¶ 8; Whelan Decl. ¶ 8.
[60] Def. 56.1 St. ¶ 9; Whelan Decl. ¶ 8.
[61] Def. 56.1 St. ¶ 10; Whelan Decl. ¶ 12. The defendant's brief states that the memoranda were prepared to assist the Attorney General "in making a policy decision in connection with the National Security Entry-Exit Registration System initiative, specifically the extent to which state and local law enforcement could assist the INS." Def. Br. at 20. The defendant's Rule 56.1 statement and accompanying declarations, however, do not support a direct connection between the OLC memoranda and the NSEERS. See Def. 56.1 St. ¶¶ 7-12; Whelan Decl.
[62] Pl. Br. at 21.
[63] Id. at 21-22.
[64] Coastal States Gas Corp., 617 F.2d at 866.
[65] Int'l Paper Co. v. Fed. Power Comm'n, 438 F.2d 1349, 1358-59 & n. 3 (2d Cir.1971).
[66] 636 F.2d 600 (D.C.Cir.1980).
[67] Id. at 604-05.
[68] Southam News v. INS, 674 F.Supp. 881, 886 (D.D.C.1987) (opinion letter on legal questions regarding the criteria used to evaluate certain applicants for visas was protected because it was generated in the course of a deliberative process); Morrison v. U.S. Dep't of Justice, Civ. A. No. 87-3394, 1988 WL 47662, at *1 (D.D.C. April 29, 1988) (undisputed that OLC opinions regarding constitutionality of new legislation were within the scope of the deliberative process privilege).
[69] Documents 7 and 8 have already been released. They consist of draft letters substantially the same as the final version of the Attorney General's March 2003 letter. Normand Decl. Ex. J. See Jadwat Decl. Ex. H.
[70] Normand Decl. Ex. K.
[71] See Coastal States Gas Corp., 617 F.2d at 866 (deliberative process privilege covers "recommendations, draft documents, proposals, suggestions....").
[72] Second Pustay Decl. ¶ 5.
[73] Id. ¶¶ 6-7.
[74] Id. ¶ 7.
[75] Grand Cent. P'ship v. Cuomo, 166 F.3d 473, 482 (2d Cir.1999).
[76] Id. (quoting Ethyl Corp. v. U.S. EPA, 25 F.3d 1241, 1248 (4th Cir.1994)).
[77] The emails inquiring whether the OLC opinion would be disclosed publicly raise also the question of whether the Deputy Attorney General's Office or the OLC ever answered this inquiry. Since plaintiffs have not made this point, the Court will not address it. The Court does note, however, that the lack of such a response in the Vaughn index tends to suggest that the Department did not have a clear policy either to withhold or to disclose the OLC opinions.
[78] 5 U.S.C. § 552(a)(4)(B); see Grand Cent. P'ship, 166 F.3d at 483; see also U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 768, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978).
[79] Supp. Normand Decl. Ex. A at 11.
[80] Id.
[81] Pl. Br. at 33; Pustay Decl. ¶ 18.
[82] Second Pustay Decl. ¶ 10.
[83] NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); accord Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 81 (2d Cir.2002).
[84] See Sears, Roebuck, 421 U.S. at 161, 95 S.Ct. 1504; accord Tigue, 312 F.3d at 81.
[85] Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C.Cir.1980).
[86] Montrose Chemical Corp. of Cal. v. Train, 491 F.2d 63, 70 (D.C.Cir.1974) (emphasis in original).
[87] Sears, Roebuck, 421 U.S. at 160, 95 S.Ct. 1504; accord Tigue, 312 F.3d at 80-81. Another way an agency may waive an Exemption 5 privilege for a document is to disclose the substance of a document outside the Executive Branch. See, e.g., United States v. Jacobs, 117 F.3d 82, 89-91 (2d Cir.1997); United States v. Metro. St. Louis Sewer Dist., 952 F.2d 1040, 1045 (8th Cir.1992); Mobil Oil Corp. v. U.S. EPA, 879 F.2d 698, 700-701 (9th Cir.1989); Peck v. United States, 514 F.Supp. 210, 212 (S.D.N.Y.1981). Plaintiffs argue that the Department waived the privilege for the April 2002 memorandum in this way, too. Pl. Br. at 16-20. The Court, however, does not reach this question because it finds that the Department waived any Exemption 5 privileges by incorporating the memorandum into policy.
[88] Def. Br. at 24; see also Def. Reply Br. at 4-8.
[89] Moreover, if taken seriously the defendant's point would seem to argue for disclosing more OLC documents, not fewer. Let us assume that the defendant is correct and that read carefully, the Department's announcements have actually referenced not the April 2002 document, but OLC advice and conclusions more generally. In that case, all documents bearing on that advice and those conclusions would have to be disclosed because all of that advice and those conclusions have, via the more general references, been incorporated into Department policy.
[90] Def. Br. at 25 (quoting Access Reports v. Dep't of Justice, 926 F.2d 1192, 1197 (D.C.Cir. 1991)).
[91] See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 186, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975) ("absent indication that its reasoning has been adopted, there is little public interest in disclosure of a report").
[92] See Access Reports, 926 F.2d at 1197 (Justice Department official's confused reference in testimony before a Senate committee to a document's conclusions did not waive privilege because the statement "fell far short of the express adoption required by Sears.")
[93] Sears, Roebuck, 421 U.S. at 152-153, 95 S.Ct. 1504.
[94] 746 F.Supp. 188, 191-92 (D.D.C.1990) (quoting Sears, Roebuck, 421 U.S. at 153, 95 S.Ct. 1504).
[95] Niemeier v. Watergate Special Prosecution Force, 565 F.2d 967, 973 (7th Cir.1977).
[96] Pl. Br. at 28-29.
[97] Grand Cent. P'ship v. Cuomo, 166 F.3d at 478 (quoting Gallant v. NLRB, 26 F.3d 168, 171 (D.C.Cir.1994) (citation and internal quotation marks omitted)).
[98] See discussion supra (citing Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994)).
[99] The complaint's second cause of action, which alleges a violation of FOIA's affirmative disclosure requirements, is not dismissed. The categories of documents subject to the affirmative disclosure requirements are, as relevant here, "statements of general policy or interpretations of general applicability formulated and adopted by the agency," 5 U.S.C. § 552(a)(1)(D) and "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," id. § 552(a)(2)(B). The scope of the complaint's second cause of action, which refers to the defendant's "new policy documents," Am. Compl. ¶ 46, could be different from the scope of the FOIA requests. The defendant's facts and arguments in support of its summary judgment motion pertain only to the documents responsive to the two FOIA requests. The defendant has failed to show that it is entitled to judgment as a matter of law on the second claim.